IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **TERRELL MONTIEL MADISON,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:25-cv-363-MTT-CHW |
| | : | |
| **WARDEN WALTER BERRY,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

### ORDER AND RECOMMENDATION

Pending before the Court is a Complaint (ECF No. 1) filed pursuant to 42 U.S.C. § 1983 by *pro se* Plaintiff Terrell Montiel Madison, an inmate who is presently incarcerated in the Johnson State Prison in Wrightsville, Georgia.[1] Plaintiff also filed a motion for leave to proceed *in forma pauperis* ("IFP") (ECF No. 2). For the following reasons, Plaintiff's motion to proceed IFP is **GRANTED**, and Plaintiff's claims that Defendant Berry was deliberately indifferent to serious medical needs shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

### MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff first seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Plaintiff's filings show that she cannot now pay

---

[1] Although Plaintiff is housed in a male prison, Plaintiff is a transgender inmate also known as Naeomi Kaior. ECF No. 1 at 1. At Plaintiff's request, this order and recommendation uses feminine pronouns. *Id.*

the filing fee. ECF No. 2-2 at 1. Her application to proceed *in forma pauperis* (ECF No. 2) is therefore **GRANTED**.

However, even if a prisoner is allowed to proceed IFP, she must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, she must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because she has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that she is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that her complaint be filed and that she be allowed to proceed without paying an initial partial filing fee.

I.      Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to her prisoner account during the preceding month toward the full filing fee. The Clerk of Court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration. It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein she is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2).

In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.  It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against her prior to the collection of the full filing fee.

  II.  Plaintiff's Obligations on Release from Custody

Plaintiff should keep in mind that release from incarceration/detention does not release her from her obligation to pay the installments incurred while she was in custody.  Plaintiff remains obligated to pay those installments justified by the income in her prisoner trust account while she was detained.  If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law.  Plaintiff's Complaint may be dismissed if she is able to make payments but fails to do so or if she otherwise fails to comply with the provisions of the PLRA.

**PRELIMINARY SCREENING**

  I.  Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.  28 U.S.C. § 1915A(a).  Courts must also screen complaints filed by a plaintiff proceeding IFP.  28 U.S.C. § 1915(e).  Both statutes apply in this case, and the standard of review is the

same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id*. (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id*. at 556. "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived her of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of her claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

    II.    <u>Factual Allegations and Plaintiff's Claims</u>

Plaintiff's claims arise from her recent incarceration at the Baldwin State Prison ("BSP"). ECF No. 1 at 6. According to the Complaint, Plaintiff was "assaulted and sexual assaulted in the open dorm bathroom of camera by 3 [Muslim] inmates." *Id.* After these assaults, Plaintiff was moved to dorm K316, an entirely different dorm, and housed with a different inmate who was not associated with the assaults. *Id.* Plaintiff appears to contend that housing her with this inmate put her safety at risk because she is "highly vulnerable to sexual abuse." *Id.* In addition, Plaintiff states she was denied hormone treatment for gender dysphoria that was diagnosed by a physician and a mental health professional. *Id.* Plaintiff names the BSP Warden Walter Berry as the only Defendant in this case,

5

contending that he violated her constitutional and statutory rights. *Id.* at 5. As a result, Plaintiff seeks, among other things, discovery and a hearing, compensatory and punitive damages, costs, and "any additional relief this Court deems just proper & equitable." *Id.* at 7.

### A. Appointment of Counsel

As an initial matter, Plaintiff requests appointment of counsel. ECF No. 1 at 7. "Appointment of counsel in a civil case is not a constitutional right." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990). "A court's appointment of counsel in a civil case is warranted only in exceptional circumstances, and whether such circumstances exist is committed to the district court's discretion." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (citing *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996)). In determining whether a case presents extraordinary circumstances, the Court considers

> (1) the type and complexity of the case; (2) whether the plaintiff is capable of adequately presenting his case; (3) whether the plaintiff is in a position to adequately investigate the case; (4) whether the evidence "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination"; and (5) whether the appointment of counsel would be of service to the parties and the court "by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." The District Court may also inquire into whether the plaintiff has made any effort to secure private counsel.

*DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The Court has considered Plaintiff's request and—after applying the factors set forth above—concludes that the appointment of counsel is not justified. Plaintiff has

demonstrated the ability to litigate her case, including filing pleadings sufficiently setting out her contentions to allow review by this Court. Additionally, at this early stage in the litigation, it is unclear if the case will proceed to trial. Thus, there is no basis to conclude that counsel will be needed for the presentation of evidence or cross examination of witnesses. Plaintiff, "like any other litigant[], undoubtedly would [be] helped by the assistance of a lawyer, but [her] case is not so unusual" that appointed counsel is necessary. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). As such, Plaintiff's request for appointment of counsel is **DENIED**.[2] Should it later become apparent that legal assistance is required in order to avoid prejudice to Plaintiff's rights, the Court, **on its own motion**, will consider assisting her in securing legal counsel at that time. Consequently, there is no need for Plaintiff to file additional requests for counsel.

### B. Deliberate Indifference to Safety

Plaintiff's Complaint first gives rise to claims that Defendant Berry failed to protect her from being assaulted. Prison officials generally have a duty under the Eighth Amendment to protect the inmates under their care from harm inflicted by other inmates. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability

---

[2] The federal *in forma pauperis* statute authorizes courts to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The statute does not, however, provide any funding to pay counsel for their representation or authorize courts to compel counsel to represent an indigent party in a civil action. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989); *Taylor v. Pekerol*, 760 F. App'x 647, 651 (11th Cir. 2019) (stating that district court has no "inherent power" to compel counsel to represent a civil litigant and § 1915 provides no such authority).

for prison officials responsible for the victim's safety." *Id.* at 834. Rather, it is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." *Id.* at 828. To state a claim for deliberate indifference to an inmate's safety, a prisoner must allege facts to show: (1) a substantial risk of serious harm; (2) each defendant's deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (citation omitted). To prevail, the prisoner must show "conditions that were extreme and posed an unreasonable risk of serious injury to [her] future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307). There are two ways for an inmate to make this showing. *Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016). First, an inmate may proceed on a "particularized threat" theory by attempting to show "that [she] was the target of a specific threat or danger." *Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016). Second, the inmate may proceed on a "dangerous conditions" theory, which requires the inmate to "demonstrate that the prison conditions [she] was subjected to were so dangerous that they resulted in cruel and unusual punishment." *Id.* Under either theory, the inmate must face "a 'strong likelihood' of injury, 'rather than a mere possibility[.]'" *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

To establish deliberate indifference, the plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839).[3] The subjective component requires that the prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." *Marbury*, 936 F.3d at 1234 (alteration in original) (quoting *Rodriguez v. Sec'y of Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007)). The prison official must have "more than a generalized awareness of risk" to the prisoner. *Id.* (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101 (11th Cir. 2014)). A plaintiff can meet this standard in a dangerous conditions case by pleading facts showing that she is "confine[d] in a prison where violence and terror reign" and "serious inmate-on-inmate violence [is] the norm or something close to it," or by "point[ing] to specific features of a facility or its population rendering it particularly violent." *Id.* at 1235 (quotation marks and citations omitted); *see also Dickinson v. Cochran*, 833 F. App'x 268, 274-75 (11th Cir. 2020) (holding that "*Marbury* makes clear" that "its violence-is-the-norm standard applies where a plaintiff alleges only a generalized risk and points to no 'specific features of a facility or its population rendering it particularly violent'" (quoting *Marbury*, 936 F.3d at 1235)). Under the particularized risk theory, an inmate must establish that she provided prison officials

---

[3] "Subjective recklessness" requires the defendant to be "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff," although a defendant cannot be held liable for a constitutional violation if he responds reasonably to a risk of which he is aware. *Wade*, 106 F.4th at 1262.

9

with enough details about a specific threat to show "that prison officials could have reasonably inferred that there was a substantial, not merely possible, risk of harm." *Marbury*, 936 F.3d at 1237. This standard does not require an inmate "to identify the person who was threatening [her] by name, or even necessarily to give the defendants advance notice of a potential attack, so long as other facts put the defendants on notice that [she] faced a substantial risk of serious harm." *Id.* The objective component requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she 'knew of ways to reduce the harm' but knowingly or recklessly declined to act." *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez*, 508 F.3d at 620).

Plaintiff does not allege any facts about the general conditions of the prison that could support a claim under the "dangerous conditions" theory, and the Court thus presumes she intends to proceed under a "particularized risk" theory. Under this theory, Plaintiff must plead facts sufficient to show that Defendant Berry knew of a substantial risk of serious harm to Plaintiff from either the inmates who attacked her on December 15, 2023, or the inmate with whom Plaintiff was housed after this attack. *See* ECF No. 1 at 6. At most, Plaintiff alleges she told Defendant Berry that he was "putting [her] safety at risk" and that she was "highly vulnerable to sexual abuse" in 2023 while she was housed in K316. *Id.* at 5. Even taking this allegation as true, Plaintiff does not plead specific facts that could show that Defendant Berry knew that the inmates who previously assaulted Plaintiff or with whom she is now living posed any sort of threat to her. She does not allege that any of the named inmates were involved in prior similar attacks, for example, nor does

10

she allege that she has been threatened or is in any other way unsafe in her current housing assignment. Moreover, Plaintiff has not pleaded any specific facts that tend to show that Defendant Berry knowingly or recklessly declined to take action to protect her. Indeed, as far as the Court can tell from the Complaint, prison officials moved Plaintiff after she was attacked, presumably in an effort to separate her from the attackers, and there are no allegations that she has been threatened or harassed in any way since she moved. *See id.* Plaintiff has therefore failed to state an actionable Eighth Amendment claim based on Defendant Berry's alleged deliberate indifference to her safety. *See McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that prisoner failed to state an actionable deliberate indifference claim where prisoner failed to inform prison officials of any "specific prior incident[] from which the defendant could infer that a substantial risk existed"). This claim should therefore be dismissed without prejudice.

### C. Deliberate Indifference to Serious Medical Needs

Plaintiff next claims Defendant Berry was deliberately indifferent to serious medical needs because he failed to follow her treatment plan for gender dysphoria, denied and questioned her gender identity, and threatened her with restrictions on her gender expression. ECF No. 1 at 15. A prison official who is deliberately indifferent to an inmate's serious medical needs violates the Eighth Amendment to the United States Constitution. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To state an actionable claim in this context, a plaintiff must allege facts sufficient to establish: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3)

11

causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

The first element is objective and requires a plaintiff to set forth a "serious medical need," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann*, 588 F.3d at 1307. "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243).

Establishing the second element—deliberate indifference—requires the same analysis as in a deliberate indifference to safety case: the plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 411 U.S. at 839).

The final element simply requires "that a defendant have a causal connection to the constitutional harm." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). "[A]s with any tort claim, [plaintiff] must show that the injury was caused by the defendant's wrongful conduct." *Id.* at 1326. "Causation, of course, can be shown by personal participation in the constitutional violation." *Id.* at 1327.

Construing the allegations in the Complaint liberally and taking them as true, as the Court must at this stage, Plaintiff has alleged that she was diagnosed with gender dysphoria by a doctor and a mental health professional. ECF No. 1 at 6. She has therefore pleaded

12

facts sufficient to show that she has a serious medical need. *See, e.g., Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1263-64 (11th Cir. 2020) (noting that parties agreed that diagnosed "gender dysphoria constitutes a 'serious medical need' for deliberate-indifference purposes and that hormone therapy is medically necessary to treat that need"). She has also alleged that someone denied her hormone treatment. ECF No. 1 at 6. Although Plaintiff does not allege any facts indicating that Defendant Berry was responsible for this denial, she does specifically allege that Defendant Berry failed to follow her treatment plan (which would presumably outline necessary hormone treatments), denied and questioned her gender identity, and threatened to restrict her ability to express her gender. *Id.* at 15. At this early stage, the Court cannot say that Plaintiff's allegations that Defendant Berry violated the Eighth Amendment by refusing to follow Plaintiff's treatment plan are entirely frivolous. *See Kothmann v. Rosario*, 558 F. App'x 907, 911 (11th Cir. 2014) (allegations that physician "knew that hormone treatment was the recognized, accepted, and medically necessary treatment for [plaintiff's gender identity disorder], yet knowingly refused [plaintiff's] repeated requests for such treatment and thus was deliberately indifferent to a serious medical need" stated a "facially plausible" claim). These claims shall therefore proceed for further factual development.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**, and Plaintiff's claims that Defendant Berry was deliberately indifferent

to her serious medical needs shall proceed for further factual development.[4] It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendant Berry, it is accordingly **ORDERED** that service be made on that Defendant and that he file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Each Defendant is

---

[4] Plaintiff requested discovery and a court hearing. ECF No. 1 at 7. Plaintiff's request for a hearing is **DENIED** at this time, and the Court will determine whether a hearing is needed at a later date. Discovery will proceed as described below.

reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party

and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be

advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED** , this 20th day of November, 2025.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge